### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

```
_____ :
                            :
PIANO WELLNESS, LLC,        :
                            :    Civ. A. No. 11-1601 (NLH)(AMD)
            Plaintiff,      :
                            :
     v.                     :
                            :    OPINION
CHARLOTTE K. WILLIAMS, a    :
citizen of the State of     :
Georgia, individually and   :
trading as                  :
KeyboardWellness.com,       :
and DOES I through X,       :
inclusive,                  :
                            :
            Defendant.      :
_____ :
```

**APPEARANCES:**

Elliott J. Stein, Esq.
Stevens & Lee, P.C.
600 College Road East
Suite 4400
Princeton, NJ 08540

     *Attorneys for Plaintiff*

Charlotte K. Williams
2550 Sandy Plains Road
Suite 225
Marietta, GA 30066

     *Defendant Pro Se*

**HILLMAN, District Judge**:

     This case concerns an alleged infringement of federally registered and common law trademarks through an internet website. Presently before the Court is the motion of Defendant pro se, Charlotte K. Williams, seeking dismissal of Plaintiff's claims,

with prejudice, for lack of personal jurisdiction pursuant to
FED. R. CIV. P. 12(b)(2).  Plaintiff, Piano Wellness, LLC, has
filed a cross-motion seeking jurisdictional discovery or,
alternatively, transfer of the case to another federal district
court.  For the reasons expressed below, Defendant's motion to
dismiss is denied, and Plaintiff's cross-motion for
jurisdictional discovery or transfer of the case is dismissed as
moot.

## I.   <u>BACKGROUND</u>

On March 22, 2011, Plaintiff, a limited liability company
with a principal place of business in New Jersey, filed a
complaint against Defendant, a citizen of the State of Georgia.
Plaintiff alleges that Defendant has engaged in unfair
competition and has infringed on Plaintiff's federally registered
trademarks, "PIANO WELLNESS SEMINAR" and "KEYBOARD WELLNESS
SEMINAR," and Plaintiff's common law trademarks, "PIANO WELLNESS"
and "KEYBOARDWELLNESS," in violation of federal and New Jersey
law by adopting a trademark that is confusingly similar to
Plaintiff's federally registered and common law trademarks.

Plaintiff specifically contends in the complaint that on or
about December 30, 2005, Defendant adopted the trademark
"KEYBOARDWELLNESS.COM" knowing that Plaintiff had already adopted
and had been using its federally registered trademarks and common
law trademarks.  (Compl. ¶¶ 21-22.)  Defendant also allegedly

filed, on March 31, 2009, an application with the United States
Patent and Trademark Office to register the trademark "KEYBOARD
WELLNESS.COM."  (Id. at ¶ 23.)

Plaintiff asserts that Defendant's adoption and use of the
trademark "KEYBOARD WELLNESS.COM" has caused confusion in the
marketplace as to the source and quality of the goods and
services marketed and sold by Plaintiff.  (Id. at ¶ 25.)
Further, Plaintiff alleges that Defendant has infringed its
federally registered trademarks by "the adoption, sale, offering
for sale, promotion and advertisement of goods and services
similar to those offered by [Plaintiff][.]"  (Id. at ¶ 37.)
Plaintiff asserts claims for infringement of federally registered
trademarks (Count One), infringement of common law rights in
trademarks and trade name (Count Two), infringement of federally
registered trademarks pursuant to 15 U.S.C. § 1114 (Count Three),
false designation of origin pursuant to 15 U.S.C. § 1125(A)
(Count Four), unfair competition (Count Five), and unfair trade
practices (Count Six).

In lieu of an answer, Defendant filed the motion to dismiss
presently before the Court.  In the motion, Defendant asserts
that she lacks any contacts with New Jersey that would provide
the Court with personal jurisdiction over her.  Defendant
represents that she is a citizen of the State of Georgia and is
the sole owner of the website KeyboardWellness.com.  (Def.'s Mem.

of Law in Supp. of Mot. to Dismiss for Lack of Jurisdiction
(hereinafter, "Def.'s Br.") 2.)  Defendant contends that she has
no offices or employees in the State of New Jersey, never
conducted business through the website in the State of New
Jersey, and has no plans to conduct business in the State of New
Jersey at any time in the future.  (Id. at 2, 3.)  Defendant
argues that her website is a "passive" website that "merely
provides contact and schedule information" and that the alleged
contact at issue in this case did not arise out of conduct in the
State of New Jersey.  (Id. at 3.)[1]

Plaintiff contends that Defendant has the requisite contacts
with the State of New Jersey, including (1) Defendant's formation
of a New Jersey corporation, Piano Wellness Enterprise
Corporation (hereinafter, "PWEC"), whose business is now
conducted by Plaintiff; (2) Defendant's status as a shareholder
of PWEC at the time she claims to have adopted the trademark that
is the subject of this action; (3) Defendant's communications
with PWEC in New Jersey over a three-year period; (4) Defendant's
alleged "campaign to harass and interfere with" Plaintiff's
business, including having had Plaintiff's website removed from
the internet three separate times; and (5) Defendant's alleged

---

1.  Defendant also alleges that Plaintiff filed the present
action solely to obtain a suspension of the proceedings pending
before the Trademark Trial and Appeal Board in connection with
Defendant's application for the mark "KeyboardWellness.com."
(Def.'s Br. 2-3.)

"pattern of threats targeting" Plaintiff in New Jersey.  (Br. in
Opp. to Mot. to Dismiss and in Supp. of Cross-Mot., in the
Alternative, for Jurisdictional Discovery and Transfer
(hereinafter, "Pl.'s Opp. Br.") 3.)  Plaintiff requests
jurisdictional discovery to uncover whether Defendant has
additional contacts with New Jersey.  (<u>Id.</u> at 3.)  Plaintiff also
notes that if the Court determines there is not a sufficient
basis to exercise personal jurisdiction over Defendant, then the
case should be transferred rather than dismissed with prejudice.
(<u>Id.</u>)

## II.   <u>JURISDICTION</u>

The Court has subject matter jurisdiction over this
trademark infringement action pursuant to 28 U.S.C. § 1338(a).
Although Defendant challenges this Court's personal jurisdiction,
"it is well established that the trial court has inherent power
and jurisdiction to decide whether it has jurisdiction."  <u>See In</u>
<u>re Automotive Refinishing Paint Antitrust Litig.</u>, 358 F.3d 288,
303 (3d Cir. 2004).

## III.  <u>DISCUSSION</u>

### A.   **Standard of Review**

Federal Rule of Civil Procedure 12(b)(2) provides for
dismissal of an action when the Court does not have personal
jurisdiction over a defendant.  "Once challenged, the plaintiff
bears the burden of establishing personal jurisdiction."

O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007) (citing Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001)).  In deciding a motion to dismiss for lack of personal jurisdiction, the Court must "accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff."  Carteret Sav. Bank v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir.), cert. denied, 506 U.S. 817 (1992) (citations omitted).[2]

A defendant is subject to the jurisdiction of a United States district court if the defendant "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located[.]"  FED. R. CIV. P. 4(k)(1)(A).  "A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law."  Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004)(citations omitted).  The New Jersey long-arm

---

2.  There is a "significant procedural distinction" between a motion pursuant to Rule 12(b)(2) and a motion pursuant to Rule 12(b)(6).  Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984).  "A Rule 12(b)(2) motion, such as the motion made by the defendants here, is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies. Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence.  . . . [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction.  Once the motion is made, plaintiff must respond with actual proofs, not mere allegations." Id. (citation omitted).

statute "permits the exercise of personal jurisdiction to the fullest limits of due process." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998) (citing DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 284 (3d Cir. 1981)).

Under the Due Process clause, the exercise of personal jurisdiction over a non-resident defendant is appropriate when the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

A defendant establishes minimum contacts by "'purposefully avail[ing] itself of the privilege of conducting activities within the forum State,'" thereby invoking "'the benefits and protections of [the forum State's] laws.'" Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of California, 480 U.S. 102, 109 (1987) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). This "purposeful availment" requirement assures that the defendant could reasonably anticipate being haled into court in the forum and is not haled into a forum as a result of "random," "fortuitous" or "attenuated" contacts with the forum state. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); see also Burger King Corp., 471 U.S. at 472, 475 (internal citations omitted).

In deciding whether a defendant's contacts with a forum are sufficient to confer personal jurisdiction over that party, the Court must consider whether such contacts are related to or arise out of the cause of action at issue in the case.  The Court may exercise specific personal jurisdiction over a defendant where the cause of action is related to or arises out of activities by the defendant that took place within the forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984).  If the cause of action has no relationship to a defendant's contacts with a forum state, the Court may nonetheless exercise general personal jurisdiction if the defendant has conducted "continuous and systematic" business activities in the forum state.  Id. at 416.

Once the Court determines that the defendant has minimum contacts with the forum state, it must also consider whether the assertion of personal jurisdiction over the defendant "comport[s] with 'fair play and substantial justice'" to satisfy the due process test.  Burger King Corp., 471 U.S. at 476 (quoting Int'l Shoe, 326 U.S. at 320).  In this regard, it must be reasonable to require the defendant to litigate the suit in the forum state, and a court may consider the following factors to determine reasonableness: the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate

8

judicial system's interest in obtaining an efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.  Id. at 477 (citing World Wide Volkswagen, 444 U.S. at 292).

The traditional paradigm set forth above for analysis of long-arm jurisdiction applies even though the present case arises in the context of the internet.  The New Jersey Supreme Court, in Blakey v. Continental Airlines, 164 N.J. 38 (2000), declined to adopt new principles to analyze long-arm jurisdiction in the internet context.  Blakey, 164 N.J. at 64 ("Rather than to attempt to create a new order of jurisdictional analysis adapted to the Internet, we prefer in this case to adhere to the basics.").  The New Jersey Supreme Court noted that "[a]lthough advances in electronic and Internet technology have created new ways to communicate, the sources of personal jurisdiction remain constant."  Id. at 46.

B.   **Analysis**

1.   **General Jurisdiction**

The Court, through general jurisdiction, may exercise jurisdiction over non-resident defendants even when the cause of action does not arise out of or relate to the non-resident defendants' activities in the forum state.  A plaintiff "must show significantly more than mere minimum contacts to establish general jurisdiction."  Provident Nat'l Bank v. California Fed.

Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987).  The
defendant's contacts with the forum state must be "continuous and
systematic."  Helicopteros, 466 U.S. at 415-16.  "Obviously this
is a much higher threshold to meet for the facts required to
assert this 'general' jurisdiction must be 'extensive and
persuasive.'"  Reliance Steel Prods. Co. v. Watson, Ess, Marshall
& Enggas, 675 F.2d 587, 589 (3d Cir. 1982) (quoting Compagnie des
Bauxites de Guinea v. Ins. Co. of N. Am., 651 F.2d 877, 890 (3d
Cir. 1981)).

    Plaintiff contends that the Court has general jurisdiction
over Defendant because Defendant formed a corporation, PWEC, in
New Jersey, thus availing herself of the privilege of conducting
business activities in this state, and then exercised her rights
in the small, closely-held corporation chartered in New Jersey
and communicated with its officers in New Jersey for three years.
(Pl.'s Opp. Br. 8-9.)  These contacts, Plaintiff asserts, were
"continuous and systematic" and are therefore sufficient to
confer general jurisdiction over Defendant.  (Id. at 9.)
Defendant disputes that she ever had an ownership interest in
PWEC.  (In Resp. to Sheila Paige's Sworn Decl. in Opp. to Mot. to
Dismiss Due to Lack of Jurisdiction (hereinafter, "Def.'s Decl.")
¶ 4.)

    Viewing the factual allegations most favorably to Plaintiff,
it appears that Defendant was in business with Sheila Paige, the

managing member of Plaintiff, for several years, in connection
with PWEC.[3]  However, any general contacts Defendant may have had
with New Jersey appear to have terminated several years ago.  In
2008, Defendant signed a settlement agreement in a separate
litigation in the Northern District of Georgia confirming that
she has no ownership interest in PWEC and releasing any claim she
may have to shares of PWEC.  (Def.'s Decl., Ex. B ¶ 9.)
Plaintiff does not allege that Defendant has had any contact with
New Jersey through PWEC or in connection with PWEC since 2008.
(Id.)  Nor does Plaintiff contend that Defendant otherwise has
had continuous and systematic contacts with New Jersey since
2008.

     Therefore, even assuming that Defendant was involved with a
New Jersey corporation more than two years prior to the filing of
the complaint in this case, there is no allegation that Defendant
has had general contacts with New Jersey in recent years.

---

3.  The Court notes, for example, an e-mail apparently from
Defendant –- the e-mail address on the e-mail is the same as the
e-mail address that Defendant has submitted to this Court –- in
which Defendant states that she is a shareholder in PWEC and has
"been spending all [her] spare time and then some working to
promote Piano Wellness and Sheila Paige," including purportedly
designing a logo for PWEC.  (Supp. Decl. of Sheila Paige in Opp.
to Mot. and Supp. of Cross-Mot., Ex. 1.)  Moreover, Ms. Paige
states in her Declaration that she met Defendant in 2003, that
they worked together until early 2006, that Defendant arranged
for the formation of PWEC in 2005, that Defendant worked for PWEC
until early 2006, and that Defendant was a shareholder in PWEC.
(Decl. of Sheila Paige in Opp. to Mot. and Supp. of Cross-Mot. ¶¶
4-7.)

Defendant's contacts through PWEC appear to have terminated when
Defendant entered into the aforementioned settlement agreement,
and Defendant's involvement in a company several years prior to
the initiation of this lawsuit does not demonstrate that
Defendant had a "continuous" presence in New Jersey at the time
the complaint was filed.  Cf. Educ. Testing Serv. v. Katzman, 631
F. Supp. 550, 553 n.9 (D.N.J. 1986)(although defendant had
attended college in New Jersey from 1977 to 1981, but had only
twelve contacts with New Jersey between graduation in 1981 and
initiation of lawsuit in 1985, court focused only on recent
contacts and not on contacts while defendant was in college in
deciding general jurisdiction issue).  Accordingly, Plaintiff has
not met its burden at this time of demonstrating that the Court
may exercise general personal jurisdiction over Defendant.

### 2.   Specific Jurisdiction

The Court next addresses whether it may exercise specific
jurisdiction over Defendant by considering whether Defendant has
minimum contacts with New Jersey specifically related to or
arising out of the cause of action in this case.  The Third
Circuit sets forth a three-part test for determining whether the
Court may exercise specific jurisdiction over a defendant.
First, the defendant must have "'purposefully directed [its]
activities' at the forum."  O'Connor, 496 F.3d at 317 (quoting
Burger King, 471 U.S. at 472).  Second, "the litigation must

12

'arise out of or relate to' at least one of those activities."
Id. (quoting Helicopteros, 466 U.S. at 414; Grimes v. Vitalink
Commc'ns Corp., 17 F.3d 1553, 1559 (3d Cir. 1994)).  Third, if
the first two prongs are met, then the Court "may consider
whether the exercise of jurisdiction otherwise 'comport[s] with
'fair play and substantial justice.''"  Id. (quoting Burger King,
471 U.S. at 476).

       To satisfy the "purposeful availment" prong of the specific
jurisdiction test, the defendant must have deliberately targeted
the forum state.  O'Connor, 496 F.3d at 317.  In this case,
Defendant operates a website at www.Keyboardwellness.com, which
she uses to provide contact and schedule information to customers
and which is apparently accessible through the internet to
individuals in New Jersey.  (See Def.'s Br. 2, 3.)  Defendant,
however, argues that she did not purposefully direct her
activities to New Jersey through the operation of the website
because the website is "passive."  Plaintiff responds that
Defendant's operation of the website is not the sole basis for
Plaintiff's assertion of jurisdiction (Pl.'s Opp. Br. 6-7),
although it is unclear whether the website is one basis for
Plaintiff's claim that the Court has personal jurisdiction over
Defendant.  The other contacts identified by Plaintiff include
Defendant's involvement with PWEC, the "taking down" of
Plaintiff's website three times, and other alleged threats and

13

attempts to extract money from Plaintiff.  (Id. at 9.)

To the extent Plaintiff bases jurisdiction on Defendant's operation of a website, the Court finds that such conduct does not provide the Court with personal jurisdiction over Defendant. In reaching this decision, the Court considers the opinion in Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997), which the Third Circuit has regarded as the "seminal authority regarding personal jurisdiction based upon the operation of an Internet web site." Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 452 (3d Cir. 2003).

In Zippo, the court noted that the "likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." Zippo, 952 F. Supp. at 1124.  The court in Zippo identified a "sliding scale" of commercial activity to examine personal jurisdiction, with defendants who actively do business over the internet on one end of the scale, defendants who merely make information available on the internet on the other end of the scale, and falling in the middle of the scale are defendants who operate interactive websites where users can exchange information with a host computer.  Id. at 1124.  The "mere operation" of a commercially interactive website does not, in itself, subject a defendant to jurisdiction across the globe.  Toys "R" Us, 318 F.3d at 454.

14

Rather, to justify the exercise of specific jurisdiction, a defendant must have "intentionally interact[ed] with the forum state via the web site" to have purposefully availed himself of the forum.  Id. at 452.

Here, Defendant's website is presumably available nationwide.  Defendant alleges, and Plaintiff does not dispute, that the website is not interactive.  There is no evidence at this time that Defendant did anything to encourage people in New Jersey to access the website, or that any part of Defendant's business was sought or achieved in New Jersey.  Nor is there any evidence at this time that New Jersey individuals have visited Defendant's website.[4]  No party addresses whether the content on the website is particularly relevant to New Jersey or is aimed at New Jersey.  Simply put, Defendant's mere operation of a passive website, which could be accessed worldwide, is not in itself sufficient to demonstrate that Defendant purposefully directed an act toward New Jersey.

Plaintiff argues that Defendant had other contacts which she purposefully directed to New Jersey that are related to this case.  The Court may consider a defendant's related activities,

_____

4.  Although Plaintiff has cross-moved for jurisdictional discovery, through which Plaintiff could potentially uncover evidence concerning Defendant's contacts with New Jersey individuals, such discovery is unnecessary because the Court finds as set forth below that Defendant's other contacts with New Jersey are sufficient for the Court to exercise personal jurisdiction over Defendant in this matter.

including those that are non-Internet activities, in deciding the
"purposeful availment" prong of specific jurisdiction.  See Toys
"R" Us, 318 F.3d at 453.  Plaintiff notes in particular that
Defendant has "demand[ed] that [Plaintiff] reach yet another
settlement with her" and that "[w]hen no settlement was reached,
[Defendant] began sending threatening e-mails and 'cease and
desist' letters to [Plaintiff] and demanding immediate responses
and payments."  (Decl. of Sheila Paige in Opp. to Mot. and Supp.
of Cross-Mot. (hereinafter, "Paige Decl.") ¶¶ 14, 15.)  Plaintiff
also contends that Defendant acted on three occasions to have
Plaintiff's website removed from the internet.  (Id. at ¶ 15.)

     Defendant does not dispute Plaintiff's contention that she
sent threatening messages and letters, and the Court accepts as
true for purposes of this motion Plaintiff's allegation that
Defendant did send threatening messages and letters.  Through
these acts, Defendant purportedly deliberately reached into New
Jersey to target one of its citizens.  However, Plaintiff fails
to state with any specificity that such contacts specifically
arose from or related to the issues in this case.  The Court
notes that the parties previously were engaged in litigation in
the Northern District of Georgia apparently concerning the mark
"Save the Pianist" and works pertaining to that mark.  (Def.'s
Decl., Ex. B.)  Clearly, then, there are trademarks not
implicated in the present case that are subject to dispute

between the parties.  Plaintiff cites no facts to establish that the alleged threats referred to by Plaintiff concerned the trademarks at issue in this case rather than other marks that are in dispute between the parties.

The only letter submitted by Plaintiff to demonstrate Defendant's alleged threatening conduct is a "cease and desist" letter from Defendant to Plaintiff's counsel dated March 27, 2011.  (Paige Decl., Ex. B.)  The sending of a "cease and desist" letter does not establish the minimum contacts or purposeful availment necessary for specific jurisdiction over a defendant. Database Am., Inc. v. Bellsouth Advertising & Pub. Corp., 825 F. Supp. 1195, 1213 n.30 (D.N.J. 1993) (noting that if sending cease and desist letters served as waiver of objection to in personam jurisdiction, "'the result would be a chilling effect on assertion of legal rights by holders of copyrights, patents, and trademarks.'") (citation omitted).[5]  Without further information, the Court is unable to conclude that it may exercise specific jurisdiction on the basis of Defendant's alleged threatening letters and messages directed to Plaintiff in New Jersey.

---

5.  The purpose of a "cease and desist" letter is to obtain an out-of-court solution, and if sending such a letter was sufficient to confer personal jurisdiction, parties would simply file suit without warning and without attempting informal resolution of the matter.  Id.  Thus, a rule that "cease and desist" letters do not establish minimum contacts serves an important interest in having disputes resolved without resort to litigation.  Id.

Notwithstanding the above, the Court finds that there is specific personal jurisdiction over Defendant based on her involvement with PWEC.  Although her relationship with PWEC is insufficiently continuous or systematic for the exercise of general jurisdiction, such relationship is sufficient for purposes of specific jurisdiction.  As previously noted, Defendant disputes that she had any involvement with PWEC, but Plaintiff alleges otherwise and has provided documents supporting her allegation.[6]  In deciding the personal jurisdiction issue, the Court must accept as true all of Plaintiff's factual allegations and all inferences derived therefrom.

Plaintiff alleges in the complaint that "[a]t least as early as 2000, Sheila Paige adopted the trademarks 'PIANO WELLNESS' and 'PIANO WELLNESS SEMINAR' to describe the services she was offering" and, about the same time, also adopted the trademarks "KEYBOARD WELLNESS" and "KEYBOARD WELLNESS SEMINAR."  (Compl. ¶¶ 10, 11.)  Ms. Paige represents that she met Defendant in 2003, and that they worked together until 2006.  (Paige Decl. ¶ 4.)  In 2005, Defendant purportedly arranged for the formation of PWEC, which had offices in Cherry Hill, New Jersey, was a shareholder in PWEC until 2008, and worked for PWEC until early 2006.  (Id.

---

6. In addition to Ms. Paige's declaration, Plaintiff has also submitted an e-mail from Defendant in which she refers to herself as a shareholder of PWEC, and Defendant has submitted a settlement agreement by which she released any claim she may have had to shares of PWEC.

18

at ¶¶ 5-7.)  Defendant allegedly "regularly communicated" with Ms. Paige in the New Jersey office.  (Id. at ¶ 7.)  Defendant's involvement in PWEC, a New Jersey company, as a shareholder and employee is a direct contact with New Jersey for purposes of specific jurisdiction.

Having identified a purposeful contact with New Jersey, the Court must also consider whether Plaintiff's claim arises out of or relates to such contact.  The Third Circuit has not adopted a definitive approach to the scope of the relatedness requirement. "[S]pecific jurisdiction requires a closer and more direct causal connection than that provided by the but-for test," but there is "no 'specific rule' susceptible to mechanical application in every case."  O'Connor, 496 F.3d at 323.  The "analysis should hew closely to the reciprocity principle upon which specific jurisdiction rests."  Id.

The Court finds that Defendant's contact with New Jersey through PWEC is related to the claims in this case.  Despite her involvement in PWEC until 2006, Defendant represents that in December 2005 she adopted the trademark "Keyboard Wellness.com." (See Def.'s Mot. 5.)  Therefore, it appears that Defendant in late 2005, while still a shareholder and employee of PWEC, started "Keyboard Wellness.com" to conduct a business similar to that conducted by PWEC.  It further appears that at some point in early 2006, Defendant and Ms. Paige decided to part ways.  (See,

e.g., Supp. Decl. of Sheila Paige in Opp. to Mot. and Supp. of
Cross-Mot., Ex. 1; Def.'s Decl., Ex. B.)  Ms. Paige then formed
Plaintiff and continued the business of PWEC.  (See Compl. ¶ 13.)
Plaintiff has now filed this action for trademark infringement
and unfair competition based on Defendant's operation of a
competing business.  Given that Defendant was an employee and
shareholder of a New Jersey corporation, at the same time set up
a competing company, and the business that succeeded the New
Jersey company has now sued Defendant's competing company for
unfair competition, there is clearly a relationship between
Defendant's New Jersey contacts and the claims in this case for
personal jurisdiction purposes.  Defendant is not being haled
into New Jersey as a result of random, fortuitous or attenuated
contacts with New Jersey and should have foreseen being subjected
to suit in New Jersey for setting up a company that competes with
a New Jersey entity.[7]

_____

7.  Plaintiff also argues that Defendant's efforts to have
Plaintiff's website removed on three prior occasions serves as a
sufficient contact for jurisdictional purposes.  The sending of a
take down notice that caused harm in New Jersey might be
sufficient for the exercise personal jurisdiction under the
"effects test" of Calder v. Jones, 465 U.S. 783 (1984).  Cf.
Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063
(10th Cir. 2008) (where defendant sent notice to eBay alleging
that fabric for sale in internet auction violated defendant's
copyright, and eBay consequently removed auction from internet,
thereby causing harm to plaintiffs' business, satisfied "effects
test" and subjected defendant to personal jurisdiction in
plaintiffs' home state).  However, in this case, the Court cannot
assume that Defendant's actions in having Plaintiff's website
removed – the last such attempt having occurred in 2009 – are

Although Plaintiff met its burden at this stage of the litigation of establishing "minimum contacts," the Court must still consider whether the exercise of personal jurisdiction would "offend traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S. at 316.  When a defendant has minimum contacts with the forum state, jurisdiction is "presumptively constitutional" and the defendant must present a "'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" O'Connor, 496 F.3d at 324 (quoting Burger King Corp., 471 U.S. at 477).  Only in the "rare" and "compelling" case will jurisdiction be unreasonable when the defendant has minimum contacts with the forum.  Id. at 325.  The defendant bears a heavy burden in demonstrating an absence of fairness or lack of substantial justice.  Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 483 (3d Cir. 1993).

In conducting a fairness inquiry, the Court considers the following factors: the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most efficient resolution of controversies, the

---

related to the trademarks implicated in this suit.  The Court specifically notes that Defendant apparently made a copyright claim to GoDaddy.com in the past concerning the title "Simple Solutions to Common Problems."  (Def.'s Decl., Ex. B ¶ 7.) Accordingly, it is not clear to the Court at this time that Defendant's conduct is sufficiently related to this case to warrant the exercise of personal jurisdiction.

interstate judicial system's interest in obtaining the most efficient resolution of the controversy, and the shared interest of the several States in "'furthering fundamental substantive social policies.'"  Grand Entm't Group, 988 F.2d at 483 (quoting Burger King Corp., 471 U.S. at 477).  As the Third Circuit recently reiterated, "if minimum contacts are present, then jurisdiction will be unreasonable only in 'rare cases.'"  O'Connor, 496 F.3d at 324 (quoting Pennzoil Prods. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 207 (3d Cir. 1998)).

Here, Defendant does not even argue that the assertion of jurisdiction is unreasonable, let alone addressing the factors set forth above.  Necessarily, then, she has failed to carry her burden of presenting a compelling case that this Court's exercise of personal jurisdiction over her would be unreasonable.

Moreover, setting aside such failure, the Court finds that the exercise of jurisdiction over Defendant is reasonable.  While it may be burdensome for Defendant to litigate this dispute in New Jersey rather than Georgia, she does not demonstrate that litigating in New Jersey is so unduly burdensome as to render jurisdiction here unreasonable.  Defendant does not assert that she will be unable to present in New Jersey evidence that would be available in Georgia.  Furthermore, even assuming there is a burden on Defendant, Plaintiff would similarly be burdened by litigating in Georgia, and litigation in Georgia therefore would

simply shift the burden to Plaintiff.  In addition, Plaintiff has
an interest in obtaining relief in a convenient forum of its
choice.  New Jersey has an interest in providing a forum for the
resolution of disputes in which the rights of a New Jersey entity
have been violated, as is alleged in this case.  The interstate
judicial system's interest in obtaining the most efficient
resolution of the controversy supports the assertion of
jurisdiction here, as there is no basis for the Court to conclude
that litigation of this dispute in New Jersey will be less
efficient than having the matter litigated elsewhere.  Moreover,
the Court would be applying federal and New Jersey law in
deciding this matter, and not the law of another state, and it
does not appear that any fundamental social policies of another
state will be implicated.

In sum, this case does not present one of the rare and
compelling instances where the exercise of personal jurisdiction
over Defendant would be unreasonable when there are minimum
contacts with the forum.  Accordingly, the Court concludes that
jurisdiction in the District of New Jersey "comports with fair
play and substantial justice."  Burger King Corp., 471 U.S. at
476.

### 3.   Plaintiff's Cross-Motion for Jurisdictional Discovery or Transfer

Having found that Plaintiff has sufficiently demonstrated
that the Court has personal jurisdiction over Defendant,

Plaintiff's cross-motion for jurisdictional discovery or transfer of the case is moot.  Accordingly, such motion will be dismissed.

**IV.   <u>CONCLUSION</u>**

The Court finds that Plaintiff has met its burden of demonstrating that Defendant had sufficient contacts with New Jersey to warrant the exercise of personal jurisdiction over Defendant.  Defendant's Motion to Dismiss for lack of personal jurisdiction will therefore be denied.  Plaintiff's cross-motion for jurisdictional discovery or transfer of the case will be dismissed as moot.  An Order consistent with this Opinion will be entered.


Date: December 21, 2011          s/ Noel L. Hillman
                                 NOEL L. HILLMAN, U.S.D.J.
At Camden, New Jersey