|  |  |  |
|---|---|---|
| PIANO WELLNESS, LLC, | : | |
| | : | Civ. A. No. 11-1601 (NLH)(AMD) |
| Plaintiff, | : | |
| v. | : | |
| | : | **OPINION** |
| CHARLOTTE K. WILLIAMS, a citizen of the State of Georgia, individually and trading as KeyboardWellness.com, | : | |
| Defendant. | : | |

**APPEARANCES:**

ELLIOTT J. STEIN
STEVENS & LEE, PC
100 LENOX DRIVE
SUITE 200
LAWRENCEVILLE, NJ 08648
    On behalf of Plaintiff

CHARLOTTE K. WILLIAMS
2550 SANDY PLAINS ROAD
SUITE 225
MARIETTA, GA 30066
    Defendant appearing *pro se*

**HILLMAN, District Judge**

    The procedural history of this case is long and tortured, and, among other events, has involved an aborted jury trial that was deemed a mistrial on November 14, 2014 due to Defendant's purported health problems[1] (Docket No. 130), three orders directing

---

[1] On November 13, 2014, at the end of the Court's two-hour long conference with the parties regarding trial documents in

Defendant to engage in mediation (Docket No. 148, 151, 179), one adjourned contempt hearing due to Defendant's notice that she would not attend (Docket No. 162), an Order to Show Cause as to why Defendant should not undergo an independent medical examination (Docket No. 164), a second contempt hearing at which Defendant failed to appear (Docket No. 190), an Order to Show Cause why default judgment should not be entered against Defendant (Docket No. 191), a hearing on the Order to Show Cause regarding default judgment, at which Defendant failed to appear (Docket No.

---

preparation for opening statements before the jury, which was to report for service at 1:00 p.m., Defendant represented to the Court that she was suffering from an illness that required immediate emergency medical care. Defendant went to the Cooper University Hospital emergency department in Camden, New Jersey. The Court ordered Defendant to appear at the courtroom upon her discharge from the hospital, and provide the Court with medical documentation regarding her hospital treatment. (Docket No. 125.) Plaintiff never appeared, and instead telephoned the Court on November 14, 2014 that she wanted the Court to release the jury and declare a mistrial due to her inability to appear for medical reasons. (Docket No. 129.) A year later, the nature and extent of Defendant's medical condition remained unclear. (See Docket No. 164.) The only medical record provided by Defendant to support her contention that her medical condition precludes her from participating in the litigation and mediation since the mistrial is a half-page progress note of an EEG performed on August 23, 2013, which states that the EEG suggests "mild left temporal dysfunction that is not specific for etiology. Clinical correlation is advised." (Docket No. 192 at 4.) Defendant provided that document on March 4, 2016, despite the Court's prior orders in 2014 and 2015 directing Defendant to provide medical documentation to support her contentions. Defendant has never submitted a note from any of her treating physicians that explains a medical basis for her claimed impairments.

198), and an order granting default against Defendant (Docket No. 200).

Currently pending is the motion of Plaintiff for default judgment in its favor (Docket No. 207), and Defendant's motion to vacate default against her, as well as vacate several other Court orders, pursuant to Fed. R. Civ. P. 60(b)(1), (3), (6) (Docket No. 202).

## DISCUSSION

### A. Subject matter jurisdiction

Originally, this Court exercised subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338(a) because Plaintiff's original complaint included claims for trademark infringement. Plaintiff filed an amended complaint on December 18, 2015, wherein it removed its trademark infringement claims and instead asserted claims for breach of contract and declaratory judgment. Consequently, this Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) insofar as the amount in controversy exceeds $75,000.00 and Plaintiff is a citizen of New Jersey, and Defendant is a citizen of Georgia, and 28 U.S.C. §§ 2201 and 2202, insofar as Plaintiff seeks a declaratory judgment in respect of an actual controversy between Plaintiff and Defendant.

### B. Rule 60(b), Rule 55(b)(2), and the Poulis factors

For Defendant's motion to vacate, Rule 60(b) provides:

3

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

For Plaintiff's motion for default judgment under Fed. R. Civ. P. 55(b)(2), "[t]hree factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000); United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984).

In Poulis v. State Farm Fire & Casualty Co., 747 F.2d 863, 868 (3d Cir. 1984), the Third Circuit outlined the following factors that should be considered prior to dismissing a case: (1) the extent of the party's personal responsibility; (2) the

prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

**C. Analysis**

    **1. Application of Rule 60(b), Rule 55(b)(2), and <u>Poulis</u> factors**

The Court finds that the circumstances of this case meet the three elements of the default judgment standard and the six <u>Poulis</u> factors:

(1) Defendant's personal responsibility: From the mistrial on, the cause for all of the Court's numerous orders falls squarely on Defendant. Defendant repeatedly claims that her poor health and financial conditions have precluded her from complying with the Court's Orders, but she has failed to provide competent documentation to support her claims – even ignoring this Court's explicit orders to do so.

(2) Prejudice to Plaintiff: Plaintiff has had to waste time and resources to respond to Defendant's conduct and fruitlessly attempt to engage in mediation to resolve the parties' dispute.

(3) History of dilatoriness: For almost three years, Defendant has flouted this Court's orders many times despite being provided with numerous opportunities to participate in the

litigation of Plaintiff's claims against her, including before this Court and through a neutral mediator.[2]

(4) As the procedural history of the case and Defendant's years of dilatory - and at times obstructionist - conduct shows, Defendant's actions have been willful and in bad faith.

(5) Effectiveness of sanctions other than dismissal: No sanction other than default judgment entered in Plaintiff's favor would be effective. The Court has issued numerous orders to Defendant to compel her participation in the litigation and mediation, and has held Defendant in contempt of those orders when

---

[2] In a March 28, 2017 letter from the mediator to this Court, the mediator reported that "efforts to achieve a settlement have been unsuccessful, but I have continued to maintain communication with both parties. In an email I received from [defendant], Charlotte Williams, earlier this month, Ms. Williams questioned my neutrality as a mediator, and suggested that I made statements to her which led her to that conclusion. I will reserve any comment on the accuracy of Ms. Williams' assertions. I thought it appropriate and indeed necessary for me to advise the Court of this communication." (Docket No. 223.) Defendant responded to the mediator's letter in an April 3, 2017 letter, in which she contended that her health conditions continue to affect her ability to defend herself, that Plaintiff's counsel threatened her, and that the mediator called her a liar. (Docket No. 224.) Plaintiff's counsel refuted Defendant's accusations about himself and the mediator in an April 4, 2017 letter, noting that "we have never seen any evidence of partiality by the Court-appointed mediator," as he "has, at all times, acted professionally and courteously to all involved in the case," and "[t]o his credit, he has continued to work with Ms. Williams despite her continued refusal to engage in any meaningful settlement discussions." (Docket No. 221) There is no basis to contest the neutrality of the court-appointed mediator in this matter whose service to the Court and the parties is appreciated. Plaintiff's unfounded allegations and scurrilous allegations are yet another example of what is a clear and intentional pattern of delaying and frustrating the orderly progression of this litigation.

she has repeatedly failed to comply. Even after the Court found Defendant in default and indicated its intention of entering default judgment against her, Defendant continued to ignore the Court and regurgitate the same unsupported excuses. Despite the Court's every effort to provide Defendant with her right to a jury trial, and, when that failed, facilitating a neutral mediator to resolve the dispute, it is clear that default judgment against Defendant is the only available remedy to Plaintiff.

(5) Meritoriousness of Defendant's defenses: Because Defendant has disregarded this Court's numerous orders and has failed to participate in good faith in the litigation process or the alternative of court-sanctioned mediation, the Court is unable to fully assess the merit of Defendant's defenses to Plaintiff's claims against her. Prior to the mistrial, the Court considered Defendant's arguments, ruled on substantive motions in which she presented her defenses, and preserved her defenses after the mistrial by ordering mediation where a neutral arbiter would hear her defenses and consider their merit. There is, however, only so much this Court can do. Defendant's unwillingness to contest this matter on the merits at every turn compels the conclusion that Defendant's defenses are lacking in merit.

For the same reasons, Defendant has not demonstrated the grounds for relief from the Court's orders under any of the six options provided by Rule 60(b).

## 2. Scope of Judgment and Damages

With regard to the determination of the scope of the judgment and the assessment of Plaintiff's damages, the Court "may conduct hearings . . . when . . . it needs to: . .. (B) determine the amount of damages; . . . ," Fed. R. Civ. P. 55(b)(2), and "the 'hearing' may be one in which the court asks the parties to submit affidavits and other materials from which the court can decide the issue." Smith v. Kroesen, 2015 WL 4913234, at *5 (D.N.J. 2015) (citing Jonestown Bank and Trust Co. v. Automated Teller Mach., Services, Inc., 2012 WL 6043624, *4 (M.D. Pa. 2012) (citing 10 James Wm. Moore, et al., Moore's Federal Practice § 55.32[2][c] (Matthew Bender ed. 2010)).

Plaintiff claims the following allegations in its amended complaint (Docket No. 174) against Defendant, which will be deemed admitted. See Comdyne I. Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990) (providing that in considering default judgment, every "well-pled allegation" of the complaint, except those relating to damages, are deemed admitted):

> Defendant breached the September 15, 2008 settlement agreement entered between Plaintiff and Defendant to settle prior litigation regarding certain trademarks and copyrights by "using a mark or symbol likely to cause confusion with PIANO WELLNESS marks . . . and represent[ing] to any party that she owns rights to said marks. . ."; by failing and refusing to assign to WELLNESS her undisclosed domains "that are likely to create confusion with the PIANO WELLNESS mark and domain," including, but not limited to www.keyboardwellness.com; by continuing to assert that she has right as a shareholder of PWEC; by failing to return and subsequently sell DVDs in violation of Sections 10 and 11 of

the Settlement Agreement; by disparaging WELLNESS in violation of Section 13 of the Settlement Agreement; and by asserting claims against WELLNESS that are barred by Section 2 of the Settlement Agreement.

(Amended Compl., Docket No. 174 at 8-9.)

Plaintiff seeks the following relief for its damages:

A. Awarding compensatory damages in favor of WELLNESS and against WILLIAMS; and

B. Entering a preliminary and permanent injunction restraining WILLIAMS, together with their officers, employees, agents, successors and assigns or others acting in concert with her, from using the trademark "KEYBOARD WELLNESS.COM" or any trademark likely to cause confusion with WELLNESS' trademarks; and

C. Directing WILLIAMS to assign the domain www.keyboardwellness.com to WELLNESS, as well as other domains which she owns that are likely to create confusion with the PIANO WELLNESS mark and domain; and

D. Directing WILLIAMS to return all copies of the DVDs described in Section 10. and 11. of the Settlement Agreement; and

E. Directing WILLIAMS to comply with Section 13 of the Settlement Agreement; and

F. Declaring that WILLIAMS can no longer assert claims against WELLNESS for trademark or copyright infringement, or any other claims on account of or which grew out of the [Earlier Litigation] including, without limitation, any and all known or unknown claims which resulted or may thereafter resulted from [the Earlier Litigation] excepting only claims for breach of the Settlement Agreement; and

G. Entering a preliminary and permanent injunction restraining WILLIAMS, together with their officers, employees, agents, successors and assigns or others acting in concert with her, from asserting claims against WELLNESS for trademark or copyright infringement, or any other claims on account of or which grew out of the [Earlier Litigation] including, without limitation, any and all known or unknown claims which resulted or may thereafter resulted from [the Earlier Litigation] excepting only claims for breach of the

Settlement Agreement; and

        H. Awarding of attorneys' fees and costs pursuant to
        WELLNESS.

(Amended Compl., Docket No. 174 at 9-11.)

The Court finds that the facts contained in Plaintiff's amended complaint, supplemented with a certification of Plaintiff's principal, Sheila Page, (Docket No. 207-2 at 12-90), and deemed admitted to by Defendant, support a finding that Defendant breached the parties' settlement agreement. See Nolan by Nolan v. Lee Ho, 577 A.2d 143, 146 (N.J. 1990) ("A settlement agreement between parties to a lawsuit is a contract."); Sery v. Federal Business Centers, Inc., 616 F. Supp. 2d 496, 507 (D.N.J. 2008) (discussing New Jersey law) (explaining that to prove a breach of a contract, a plaintiff must show that a valid agreement existed, defendant materially breached the terms of the agreement, and plaintiff suffered damages as a result of the breach).

The Court further finds that Plaintiff is entitled to the declaratory and injunctive relief it requests. See Totaro, Duffy, Cannova and Company, L.L.C. v. Lane, Middleton & Company, L.L.C., 921 A.2d 1100, 1107 (N.J. 2007) (citation omitted) ("Judicial remedies upon breach of contract fall into three general categories: restitution, compensatory damages and performance . . . . Restitution returns the innocent party to the condition he or she occupied before the contract was executed[;] compensatory damages put the innocent party into the position he or she would

have achieved had the contract been completed[;] performance makes the non-breaching party whole by requiring the breaching party to fulfill his or her obligation under the agreement.").

Plaintiff requests $75,000 in compensatory damages, where Page's certification states that because of Defendant's breach, Plaintiff suffered a loss of $25,807.00 instead of an expected profit of $30,000 to $40,000, totaling a $50,000 loss in 2009, and that in 2011, Plaintiff suffered another $25,000 in damages. The Court finds that Plaintiff is entitled to compensatory damages, but the Court also finds that Plaintiff's claim of $75,000 in losses is unsupported by any documentary evidence, which is insufficient to establish damages on default judgment for breach of contract. See Paniagua Group, Inc. v. Hospitality Specialists, LLC, 183 F. Supp. 3d 591, 606 (D.N.J. 2016) (finding insufficient the evidence to support claim for damages for a default judgment on a breach of contract claim where the plaintiff only submitted an affidavit that simply stated that defendants owed $255,415.05, noting that the plaintiff did not provide any invoices or other documentary evidence to support its damages claim with respect to the amount it was owed by defendants) (citing Mapssy Int'l, Inc. v. Hudson Valley Trading Inc., No. 08-3037, 2012 WL 4889229, at *6 (D.N.J. Oct. 11, 2012) (concluding that the plaintiff had asserted a specific damage amount based on a breach of contract but had "not submitted documentation to support" the damages claim and

that the court would only enter a damages judgment "[u]pon receipt of memoranda and proof of [the] [d]efendant's outstanding debts")).

The Court also finds that Plaintiff is entitled to mediation fees and attorney's fees and costs that she incurred, as detailed in Page's certification, (Docket No. 207-2 at 53-90), as a sanction for Defendant's willful and culpable conduct, described above and further evidenced by the record. See Republic of Philippines v. Westinghouse Elec. Corp., 43 F.3d 65, 73 (3d Cir. 1994) ("Our legal system will endure only so long as members of society continue to believe that our courts endeavor to provide untainted, unbiased forums in which justice may be found and done. Thus, it is beyond peradventure that district courts have broad authority to preserve and protect their essential functions . . ., [and] district courts have tools available to protect their truth-seeking process," including numerous Federal Rules of Civil Procedure, Congress-enacted laws, and a court's inherent authority.); see also Chambers v. NASCO, Inc., 501 U.S. 32, 45–46 (1991) (internal quotations, alterations, and citations omitted):

> There are ample grounds for recognizing . . . that in
> narrowly defined circumstances federal courts have inherent
> power to assess attorney's fees against counsel, even though
> the so-called "American Rule" prohibits fee shifting in most
> cases. As we explained . . ., these exceptions fall into
> three categories. The first, known as the "common fund
> exception," derives not from a court's power to control
> litigants, but from its historic equity jurisdiction, and
> allows a court to award attorney's fees to a party whose
> litigation efforts directly benefit others. Second, a court

may assess attorney's fees as a sanction for the "willful disobedience of a court order." Thus, a court's discretion to determine the degree of punishment for contempt permits the court to impose as part of the fine attorney's fees representing the entire cost of the litigation. Third, . . . a court may assess attorney's fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." In this regard, if a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party, as it may when a party shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order. The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy.

Even though Defendant's conduct from the mistrial in November 2014 onward through today evidences habitual obstinate behavior, and would support a finding that Defendant should be sanctioned for all of Plaintiff's attorney's fees and costs from that time,[3] the Court finds a fair and reasonable sanction to be that

---

[3] It must be reiterated that Defendant's conduct compelled the Court to hold her in contempt on March 3, 2016 for her continued refusal to comply with the Court's orders. Instead of appearing at the contempt hearing, which was the second contempt hearing Defendant failed to attend, or the hearing on April 4, 2016 with regard to Plaintiff's motion for default against Defendant, Defendant retained counsel in New Jersey, even though she repeatedly told the Court she did not have enough money to travel to New Jersey and was living month-to-month (see Docket No. 182), for the sole purpose of further delaying the proceedings (see Docket No. 186, 193, 194). When that delay tactic failed, (see Docket No. 195), the attorney moved to withdraw as Defendant's counsel because she terminated his representation (see Docket No. 196).

Defendant pay Plaintiff for the expenses it outlaid for the mediation[4] ($2,882.00),[5] as well as the attorney's fees and costs it incurred from the time Plaintiff notified the Court in March 31, 2015 that Defendant refused to participate in Court-ordered mediation (Docket No. 146), through April 18, 2016, when Plaintiff submitted her proofs regarding default judgment (Docket No. 201) after the Court found Defendant to be in default (Docket No. 200) ($10,385.50).[6]

## **CONCLUSION**

Based on the foregoing, Defendant's motion to vacate must be denied, and Plaintiff's motion for default judgment must be granted. Within 30 days, Plaintiff shall pay $2,882.00 to the mediator, and $10,385.50 to Plaintiff's counsel.

An accompanying Order and Order of Judgment will be entered separately.

Date: June 29, 2017          s/ Noel L. Hillman
At Camden, New Jersey        NOEL L. HILLMAN, U.S.D.J.

---

[4] The mediation costs are as of January 21, 2016. The mediator continued to communicate with Defendant in an effort to resolve the matter for over a year after that time. (See Docket No. 223.)

[5] By this Court's Order (Docket No. 148), Defendant was already required to pay half of the total cost of mediation.

[6] Plaintiff's counsel notes in his certification that Plaintiff was charged an hourly fee of $480.00 instead of his usual rate of $685.00 per hour.